___



SO ORDERED,

**Judge Jason D. Woodard**

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.
___

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | | |
| Maketha Brown, | ) | Case No.: | 14-11080-JDW |
| | ) | | |
| Debtor. | ) | Chapter | 13 |

___

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR CONTEMPT OF DISCHARGE INJUNCTION FILED AGAINST PRESTIGE AUTO SALES, RALPH E. PINNER, SR. D/B/A PRESTIGE AUTO SALES AND RALPH E. PINNER, SR, INDIVIDUALLY (Dkt. # 55)

This matter came before the Court for hearing on the *Motion for Contempt of Discharge Injunction Filed Against Prestige Auto Sales, Ralph E. Pinner, Sr. d/b/a Prestige Auto Sales and Ralph E. Pinner, Sr., Individually* (the "Motion for Contempt") filed by the debtor, Maketha Brown. (Dkt. # 55). Prestige Auto Sales, LLC ("Prestige") concedes liability, leaving the Court to determine damages. The Court awards the debtor $1,875.78 in damages.

1

# I. FACTS[1]

On March 19, 2014, the debtor filed her chapter 13 petition. (Dkt. # 1). Her chapter 13 plan was confirmed on May 16, 2014. (Dkt. # 19). The debtor completed her case and on June 5, 2018, the Order of Discharge was entered. (Dkt. # 48). Prestige was on notice of the bankruptcy case and received pleadings and orders throughout the entire case, including the discharge order. The prepetition debt to Prestige was among those debts barred from collection by the discharge order.

On November 21, 2018, Prestige filed a Suggestion for Garnishment with the Tate County Justice Court seeking to collect on the discharged debt. On February 4, 2019, the debtor received a letter from her employer notifying her that her paycheck would be garnished because a Writ of Garnishment had been issued in favor of Prestige. In response, the debtor informed her employer that the debt had been discharged. Her employer told her that Prestige would have to file paperwork to stop the garnishment. The debtor then contacted her bankruptcy lawyer and hired him to stop the garnishment and enforce the discharge injunction.

On February 19, 2019, the debtor's attorney sent a letter to Prestige demanding that the garnishment be stopped and threatening further

---

[1] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such, and vice versa.

litigation. Prestige did not respond to the letter or do anything to stop the garnishment. The debtor's paycheck was garnished $321.21 every month in March, April, and May, totaling $963.63.

On April 25, 2019, the debtor filed the Motion for Contempt. Prestige then, for the first time, contacted its lawyer and stopped the garnishment. Prestige's representative testified that Prestige would not have stopped the garnishment if the contempt motion had not been filed. The garnished funds have since been returned to the debtor, but the debtor suffered other damages due to the garnishment.

The debtor credibly testified that because her check was garnished, she could not afford child care, which caused her to miss 68 hours of work. She testified that she is paid $19,600 a year and works forty hours each week, which translates to $9.42 per hour. The debtor's lost wages total $640.56. The debtor also testified that she did not have to pay for child care during this 68 hours. She testified that she typically pays $150 per week for child care, which translates to $3.75 per hour and a savings of $255 in child care costs for the 68 hours. Accordingly, the debtor's wages claim, less the child care savings, is $385.56.

The debtor also testified that on the day of the hearing on the Motion for Contempt, she was scheduled to travel to Tunica, Mississippi, for work and would have received a reimbursement check for her mileage. The

reimbursement check would have compensated the debtor for fuel charges and vehicular wear and tear. The debtor did not receive the check because she did not travel to Tunica.

The debtor also credibly testified that because her paycheck was garnished she did not have the money to pay her cable and credit card bills. Consequently, she incurred late fees for each month that her paycheck was garnished. During April, May, and June, the debtor was charged late fees of $27 and $19 each month on two of her credit cards. In both May and June, she was also charged late fees of $5 each month for her cable bill. The debtor's late fees total $148.

The debtor also incurred attorney fees. The debtor and Lawrence Dockery, a paralegal at the Fava Firm, testified that Mr. Fava charged $300 per hour and worked 6.2 hours to prosecute the Motion for Contempt, totaling $1,860. Mr. Dockery also testified that his rate was $50 an hour and he worked 3.5 hours, totaling $175. Debtor requests an attorney fee award of $2,035. No individual time entries were submitted detailing the legal work performed.

The debtor testified that she traveled 64 miles roundtrip to meet with her attorney. She also traveled 95 miles roundtrip to attend the hearing.

The debtor submitted no evidence of Ralph Pinner's personal liability for the violation of the discharge order.

No punitive damages were requested by the debtor.

## II. CONCLUSIONS OF LAW

Under 11 U.S.C. § 524(a)(2), a discharge order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset" a discharged debt. 11 U.S.C. § 524(a)(2). "The discharge injunction is broad and prohibits any act taken to collect a discharged debt as a personal liability of the debtor." *In re Diaz*, 526 B.R. 685, 691 (Bankr. S.D. Tex. 2015) (quoting *McLure v. Bank of Am. (In re McClure)*, 420 B.R. 655, 659 (Bankr. N.D. Tex. 2009)). Bankruptcy courts may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). A civil contempt order, "which compensates a debtor for damages suffered as a result of a creditor's violation [of the discharge injunction] was both necessary and appropriate to carry out the provisions of the bankruptcy code." *Placid Refining Co. v. Terrebonne Fuel and Lube, Inc. (In re Terrebonne Fuel and Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997).

The United States Supreme Court recently confirmed that a bankruptcy court may impose civil contempt for violation of a discharge order when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order. *Taggart v. Lorenzen (In re Brown)*, 139 S.Ct. 1795 (2019). That standard is not at issue here because Prestige has

conceded that it violated the discharge injunction. At the hearing, all evidence and argument focused on damages.

While *Taggart* did not focus on damages, the Supreme Court did note that subjective intent is relevant to determining damages. *Id.* at 1802. Prestige submitted no evidence mitigating its liability or the debtor's damages in this case. Prestige was given notice of the discharge order and did nothing to stop the garnishment until it received the Motion for Contempt. In fact, Prestige would have continued to garnish the debtor's paycheck had the contempt motion not been filed.

"Compensatory damages, in addition to coercive sanctions, may be awarded as a sanction for civil contempt if a party willfully violates a section 524(a)(2) injunction." *In re Sandburg Fin. Corp.*, 446 B.R. 793, 803 (S.D. Tex. 2011). The United States Supreme Court has defined compensatory damages as "damages that 'will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury.'" *F.A.A. v. Cooper*, 566 U.S. 284, 307 (2012) (quoting Black's Law Dictionary 467 (rev. 4th ed. 1968)). Compensatory damages for a violation of the discharge injunction may include: attorneys' fees, litigation costs, travel expenses, and other actual losses, including lost wages. *In re Haemmerle*, 529 B.R. 17, 26 (Bankr. E.D. N.Y. 2015). Here, the debtor seeks compensatory damages for her lost wages, a reimbursement check she would

have received had she not attended the hearing, late fees, her attorney's fees, and travel costs related to the garnishment.

First, the debtor is entitled to compensation for her lost wages. *Sandburg*, 446 B.R. at 803; *In re Manzanares*, 345 B.R. 773, 794 (Bankr. S.D. Fla. 2006). But for the garnishment, the debtor would have paid for child care and earned an additional $640.56 in wages. This amount must be decreased by the child care costs she did not incur. The debtor lost wages of $640.56, but saved $255 in child care, resulting in actual damages for lost wages of $385.56.

The debtor is entitled to damages for the roundtrip miles driven to meet with her attorney and to attend the hearing. Mileage is computed at the current federal rate, $0.58 per mile. Her mileage award totals $92.22.

The debtor is not entitled to damage for the reimbursement check she did not receive. The mileage check is in the nature of reimbursement, not compensation. The debtor did not incur fuel costs or vehicular wear and tear for a trip to Tunica. This entire request is due to be denied.

The debtor is entitled to the $148 in late fees she incurred because her check was inappropriately garnished. Again, but for the garnishment, these bills would have been paid and no late charges incurred. Thus, damages of $148 are appropriate.

An award of attorney's fees is also appropriate, but not all of the fees charged by Mr. Fava are reasonable under the *Johnson* factors. *Johnson v.*

7

*Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). Mr. Fava did not submit any time entries, but instead his paralegal testified to the block of time spent on this matter. There is no way for the Court to go through each aspect of Mr. Fava's representation and determine what was reasonable and what was not. The Court must use its discretion to make a determination. *Perdue v. Kenny A.*, 559 U.S. 542, 558 (2010).

Mr. Dockery testified that he worked 3.5 hours on this case and Mr. Fava worked 6.2 hours. To prosecute the Motion for Contempt, the testimony showed that Mr. Fava wrote a letter to Prestige, filed to reopen the case, filed the Motion for Contempt, met with his client, and attended the hearing.[2] Neither filing was extensive or lengthy—the Motion to Reopen was just over one page and the Motion for Contempt was four pages. No discovery was conducted. *Johnson*, 488 F.2d at 717. The issue presented was not novel or unique. *Id.* at 718. This case did not preclude other employment. *Id.* It was not an undesirable case. *Id.* at 719. The fees requested in this case total $2,035. Prestige garnished $963.63 from the debtor, which was returned, and her compensatory damages total $625.78. Mr. Fava's fees would more than triple the debtor's award. The Court finds that a reasonable amount of time

---

[2] Mr. Fava also participated in other hearings with the Court during this same docket call, so his attendance at this hearing cannot be solely attributed to the Motion for Contempt.

8

spent on this case would have been 4 hours by Mr. Fava at $300 per hour and an hour by Mr. Dockery at $50, totaling $1,250.

## III. CONCLUSION

Prestige concedes liability for its violation of the discharge order, but contests the damages sought by the debtor. The debtor is due compensatory damages for any actual damage she experienced because of Prestige's violation. She is entitled to compensation for her lost wages less her child care savings, mileage to meet with her attorney and attend the hearing, late fees, and attorney's fees. No punitive damages were requested. Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED** that the Motion for Contempt is **GRANTED**, as to Prestige Auto Sales, LLC only. The Debtor is awarded $625.78 in compensatory damages and $1,250 in attorney's fees, for a total award of $1,875.78.

##END OF ORDER##